IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL E. JOHNSON, #335-470            *
          Plaintiff,

                              *

   v.                                                    CIVIL ACTION NO.  JFM-08-2753
                              *

DAWN M. CHEWNING[1], et al.,
          Defendants.                    *

                            ******

## MEMORANDUM

On October 17, 2008, pro se plaintiff Michael E. Johnson, an inmate currently incarcerated at the Patuxent Institution in Jessup, Maryland, filed a civil rights complaint pursuant to 42 U.S.C. §1983 seeking money damages and injunctive relief.  Paper No. 1.   Pending before the court are defendants' dispositive motions  (Paper Nos. 12 and 18), which shall be treated as motions for summary judgment.  Plaintiff has not filed a response.[2]   No hearing is needed to resolve the pending dispositive motions. *See* Local Rule 105.6 (D. Md. 2008).  For the reasons that follow the motions SHALL BE GRANTED.

## Factual and Procedural  Background

Plaintiff alleges that he was transferred from Roxbury Correctional Institution ("RCI")  to the Eastern Correctional Institution ("ECI")  on September 23, 2008, and suffered a seizure two days later.  Paper No. 1.  He states that he was treated cruelly and harassed while in the medical unit by defendants Chewning and Jeeter.  He further alleges that while in the medical unit he was forced to

---

[1] The clerk shall be directed to amend the docket to reflect the correct name of defendant Dawn Chewning.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on January 13, 2009 and March 18, 2009,  plaintiff was notified that defendants had filed a dispositive motion, the granting of  which could result in the dismissal of his action.  Paper Nos. 13 and 22. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

sleep on a cold concrete floor, and denied showers, recreation, and his legal documents. *Id.* Plaintiff further claims that Chewning removed records from his medical chart, and she and Jeeter each filed a false infraction against him. *Id.*

Plaintiff states that the conditions of cells in Housing Unit #4 were "inhumane." He states that the tiers and floors were dirty and the food was cold. He states he was denied his legal materials. He also claims that long-term segregation caused him a mental break down and that the conditions in his vermin-infested segregation cell were deplorable, with food on the door, walls, floor, and window. *Id.*

The uncontroverted records reveal that plaintiff has a history of schizophrenia, seizures, asthma, Hepatitis C, and an old wrist fracture. Paper No. 12, Ex. A and B. He was transported from RCI to ECI on September 24, 2008. Paper No. 18. Ex. 1. On that date, plaintiff was transferred to an outside medical facility for further treatment and evaluation of a possible seizure. Paper No. 12, Ex. A and B. Plaintiff was returned to ECI on September 25, 2008, and admitted to the infirmary. *Id.*

Sergeant Jeeter was assigned to ECI's infirmary on September 29 and 30, 2008 and October 1 and 2, 2008. *Id*, Ex. 2. Plaintiff was admitted to the infirmary and placed in an observation cell. *Id.* While housed in the infirmary, plaintiff refused his prescribed medications, including psychotropic and anticonvulsant medications, alleging that he observed medical staff removing medication from capsules and filling them with poison. Paper No. 12, Ex. A and B. The cell bunk was removed from the observation cell and a mattress, two sheets, and a blanket were placed in the cell. This was done due to plaintiff's seizure disorder; the mattress was placed on the floor to prevent plaintiff from injuring himself. *Id.*, Paper No. 18, Ex. 1. While housed in the observation cell, plaintiff had free access to the shower. Paper No. 18, Ex. 1.

On October 1, 2008, Chewning was advised by a correctional officer that he heard plaintiff

tell another inmate he was going to "cut [Chewning] up in little pieces." Chewning filed an infraction report against plaintiff based on this threat. Paper No. 12, Ex. A.

On October 2, 2008, plaintiff was discharged from the observation cell. Paper No. 18, Ex. 1. Plaintiff told a correctional officer that he had a medical order not to be handcuffed because of his broken wrist. Paper No. 12, Ex. A. Chewning reviewed medical records but did not find such an order in plaintiff's medical file. *Id.* Plaintiff accused Chewning of removing the order. Jeeter was advised by medical staff that, plaintiff's claims to the contrary, there was no medical documentation requiring plaintiff be handcuffed in the front. Jeeter advised plaintiff there was no medical documentation concerning special handcuffing and ordered plaintiff to step to the cell door slot to be handcuffed. Plaintiff complied with the order and was cuffed by another officer and escorted to the segregation unit. Paper No. 18, Ex. 1.

After plaintiff was removed from the observation cell, Jeeter inspected the cell and noticed that the devise used to lock the shower door was pulled away from the wall. Photographs of the cell were taken and Jeeter was instructed to write an infraction against plaintiff for destroying state property. Plaintiff was found guilty of the rule infraction and received a sixty-day segregation sentence. He was also ordered to pay restitution. *Id.*

Plaintiff was transferred to the Correctional Mental Health Center-Jessup on October 28, 2008. Paper No. 18, Ex. 1.

## Standard of Review

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### A.    Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of  defendants (or their failure to act)

amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97,

106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the

prisoner was suffering from a serious medical need and that, subjectively, the prison staff  were

aware of the need for medical attention but failed to either provide it or ensure the needed care was

available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above,  the medical condition at issue must be serious.  *See  Hudson v. McMillian,*

503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to

health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The second component of proof requires "subjective recklessness" in the face of the serious medical

condition.  *Farmer*, 511 U.S. at 839–40.  "True subjective recklessness requires knowledge both of

the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.

3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter

. . . becomes essential to proof of deliberate indifference 'because prison officials who lacked

knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach*

*Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.   If the

requisite subjective knowledge is established, an official may avoid liability  "if [he] responded

reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew

at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574,

577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that

could have been taken).

To the extent plaintiff claims the conduct complained of constitute a denial of medical care,

his claim fails.   Plaintiff was housed at ECI for less than a month before being transferred to the Correctional Mental Health Center-Jessup.   The named correctional defendants have no direct personal involvement in plaintiff's medical or psychological care.  *See West v. Adkins*, 815 F. 2d 993 (4th Cir. 1987).   Moreover, the medical records and Chewning's affidavit demonstrate that plaintiff was admitted to the infirmary for observation but he refused all medications during the time he was housed at ECI.   Paper No. 12, Ex. A and B.   Accordingly, defendants are entitled to summary judgment.

**B.**     **Harassment**

Verbal abuse of inmates by guards, without more, states no claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979);  *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D. N.C. 1990). Plaintiff's claim that Jeeter harassed him while he was housed on the medical unit and that Jeeter along with four other correctional officers threatened him are insufficient to state a constitutional claim. To the extent that plaintiff is alleging that defendants' statement somehow placed him in danger, he has not alleged an adequate injury to state a claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (serious injury required in order to state a failure to protect claim); *see also Siegert v. Gilley* 500 U.S. 226, 234-35 (1991).

**C.**     **Conditions of Confinement**

Plaintiff complains that the conditions of his confinement at ECI were deplorable.  He alleges his cells were dirty and vermin infested.  Paper No. 1.  Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society."

*Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).  Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 297(1991) (quotations omitted). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32  (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.).

Plaintiff has been challenged to come forward with evidence, *i.e.* records and/or declarations, which proves both components of the Eighth Amendment standard.  He claims that while housed in the infirmary he was made to sleep on a cold concrete floor.  The undisputed records before the court reveal that plaintiff was provided blankets and a mattress while housed in the observation cell of the infirmary and given free access to a shower.  He states that while housed in segregation, he was served cold food and the showers were dirty.  He also alleges that vermin infested the buildings. The areas where plaintiff was housed are subjected to regular routine cleaning.  Paper No. 18, Ex. 2, Document 12.  Additionally, ECI contracts with Chesapeake Exterminators, Inc. for pest control services . *Id*., Ex. 4.  The contract includes eight monthly treatments which include treatment of all common areas and reported problem areas listed in the contract.  The contract also calls for four

quarterly treatments.  *Id.*   Defendants' assertions concerning the conditions at ECI remain unchallenged by plaintiff.   Moreover, the court observes that other than allegations of discomfort, plaintiff has not alleged, much less shown,  that he suffered any physical harm from the conditions he describes.  Lastly, plaintiff has not provided any facts suggesting that the defendants acted with "deliberate indifference" to his health and safety. Accordingly, defendants are entitled to summary judgment as to this claim.

**D.**     **Segregation**

To the extent plaintiff claims that his assignment to segregation was improper, his claim also fails.  Plaintiff essentially is raising a claim of denial of due process.  Prisoners do not have a constitutional right to be housed in one prison versus another.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations. *See Sandin*, 515 U.S. at 484.  Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations.  *Id.* Following the reasoning of the Supreme Court in *Sandin*, a liberty interest is not implicated when prisoners are placed on administrative segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).   It is not "atypical" for inmates to be placed on administrative segregation for any number of reasons.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Plaintiff has not shown that the conditions of segregation were significantly more

onerous than those of general population.  *See Beverati,* 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at Eastern Correctional Institution).

**E.      Excessive Force**

Plaintiff's claim that his being handcuffed behind his back amounted to excessive force likewise fails.  Paper No. 1.  Analysis of cruel and unusual punishment claims "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)."  *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996).   In order to meet the subjective component of this test in an excessive force case, a prisoner must show that the force was applied "maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U S. 1, 6-7 (1992)  In making this determination, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response.  *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Insofar as the objective element of an excessive force case is concerned, the prisoner "need not show that [the] force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action.  All that is necessary is proof of more than de minimis pain or injury."  *Williams*, 77 F.3d at 761(citation omitted); *see also Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994).   There are no medical records which demonstrate that plaintiff suffered any injury as a result of being handcuffed from behind.  Plaintiff's own description of the injury suffered does not demonstrate that the injury was more than de minimis.  *See Riley v. Dorton*, 115 F. 3d 1159, 1167-68 (4th Cir. 1997) (handcuffing pretrial detainee for six hours, inserting tip of pen in detainee's nose,

threatening detainee, and slapping detainee across face, demonstrated no more than de minimis injury.).

Assuming, arguendo, that plaintiff has satisfied the objective component of an excessive force claim, he has failed to bring forth any evidence to satisfy the subjective component. There is no material dispute that plaintiff was handcuffed to be moved from the medical unit to the segregation unit. Likewise, there is no dispute that there is no evidence that plaintiff had a medical order to be handcuffed in front. Assuming plaintiff orally advised defendants he could not be cuffed from behind, there is simply no evidence that plaintiff was under a valid physician's order at the time or that defendants understood a risk of harm to plaintiff by cuffing him from behind. Simply stated, there is no evidence that defendants acted in a manner to deliberately cause harm to plaintiff. Rather, the evidence demonstrates that defendants were acting in accordance with Division of Correction policy in safeguarding themselves and others from plaintiff. Plaintiff presented no evidence that medical concerns required him to be handcuffed in a different manner. Each defendant is entitled to summary judgment.

**F.    Access to Courts**

Plaintiff's claim that he was denied access to his legal materials provides no basis for relief. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, at 351 (1996).

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation.

*Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 354.  Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 354.  Plaintiff has failed to allege, much less demonstrate, any actual injury as a result of the problem alleged.

**G.    False Reports**

Plaintiff alleges that Jeeter and Chewning each filed false disciplinary reports against him. Paper No. 1.  In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).  These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision.  *Wolff*, 418 U. S. at 564-571.  Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).  The court has not been provided the record concerning plaintiff's adjustment proceedings.  Plaintiff, however,  does not allege that he did not receive all the process that was due during those hearings.[3] Jeeter and Chewning both aver that they did not file false reports against plaintiff.   Paper No. 12, Ex. A, Paper No. 18, Ex. 1.   Plaintiff has failed to contradict these affidavits.  Additionally, photographs have been provided to the court demonstrating the damage to the shower door. Paper No. 18, Ex. 1, Attachments.

---

[3] Moreover, a prisoner has no constitutionally guaranteed immunity from being falsely accused.  *See, Freeman v. Rideout,* 808 F. 2d 949, 951 (2nd Cir. 1986).

**H.     Conspiracy**

To extent plaintiff claims that a conspiracy existed between Chewning and Jeeter, his claim

fails.  A conclusory allegation of a conspiracy such as is made in this case is insufficient to state a

claim.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of

conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679,

681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and

factual support to suggest a meeting of the minds.") (quotation omitted).  *Langworthy v. Dean*, 37 F.

Supp.2d 417, 424-25 (D. Md. 1999).

**I.     Injunctive Relief**

During the pendency of this action, plaintiff was transferred from ECI.  Paper No. 18. The

transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See*

*County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)*; Williams v. Griffin*, 952 F.2d 820, 823

(4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)*; see also Cotterall v. Paul*, 755

F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a

pending case or controversy regarding injunctive relief if unaccompanied by any continuing present

injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records

before the court that plaintiff is no longer housed at ECI, his request for injunctive relief has been

rendered moot and shall be denied.

**<u>Conclusion</u>**

For the reasons stated above, defendants' motions for summary judgment shall be granted. A separate order follows.


August 19, 2009                                    /s/

Date                                                      J. Frederick Motz
                                                             United States District Judge